## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

ASSOCIATION CASUALTY                )
INSURANCE COMPANY,                   )
                                     )
            Plaintiff,               )
                                     )
v.                                   )       Case No. CIV-23-00895-JD
                                     )
VEERLAKSHMI, LLC d/b/a BEST          )
WESTERN GLO,                         )
                                     )
            Defendant.               )

## ORDER

Before the Court is Plaintiff Association Casualty Insurance Company's

("Columbia") Motion for Summary Judgment. [Doc. No. 48]. Defendant Veerlakshmi,

LLC ("Glo") responded [Doc. No. 80], and Columbia replied [Doc. No. 83].[1] The Court

also ordered supplemental briefs from the parties. [Doc. No. 95]. Columbia filed a

Supplemental Brief in Support of Motion for Summary Judgment [Doc. No. 98], and Glo

filed a Supplemental Summary Judgment Brief Related to Burdens of Proof [Doc. No.

99]. Thereafter, the Court ordered response briefs to each party's supplemental brief.

[Doc. No. 101]. Columbia filed a Response to Veerlakshmi, LLC's Supplemental

Summary Judgment Brief Related to Burdens of Proof [Doc. No. 102], and Glo filed a

---

[1] Plaintiff Association Casualty Insurance Company is a member of the Columbia Insurance Group. The parties refer to Plaintiff as "Columbia." The parties also refer to Defendant Veerlakshmi, LLC as "Glo" for its trade name "Best Western Glo." For ease of reference, the Court mirrors these labels throughout this order.

Reply to Columbia's Supplemental Summary Judgment Brief Related to Burden of Proof [Doc. No. 103].

For the reasons stated below, the Court GRANTS Columbia's Motion for Summary Judgment.[2]

## I.     <u>PROCEDURAL HISTORY</u>

In October 2023, Columbia filed this declaratory judgment action under diversity jurisdiction against its insured, Glo, seeking a declaration of non-coverage for interior rainwater damage sustained by Glo's hotel property located in Enid, Oklahoma. [Doc. No. 1]. Glo answered and asserted counterclaims for breach of contract and breach of the duty of good faith and fair dealing. [Doc. No. 14]. In September 2024, Columbia moved for summary judgment on its declaratory judgment claim. [Doc. No. 48]. Glo responded after the close of discovery in November 2024. [Doc. No. 80].

The parties also filed various discovery related motions, [Doc. Nos. 58, 74, 75, 92], which the Court stayed pending disposition of Columbia's motion for summary judgment [Doc. No. 100].

## II.     <u>LEGAL STANDARDS</u>

### A. Summary Judgment Standards

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is material if under the substantive law it is

---

[2] The Court cites to page numbers using the CM/ECF numbers located at the top of each page on the district court docket.

essential to the proper disposition of the claim." *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1137 (10th Cir. 2016) (internal quotation marks and citation omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Doe v. Univ. of Denver*, 952 F.3d 1182, 1189 (10th Cir. 2020) (explaining that a dispute over a material fact is genuine "if a rational jury could find in favor of the nonmoving party on the evidence presented" (citation omitted)). In applying this standard, the Court "review[s] the facts and all reasonable inferences those facts support[] in the light most favorable to the nonmoving party." *Doe*, 952 F.3d at 1189 (second alteration in original) (quoting *Evans v. Sandy City*, 944 F.3d 847, 852 (10th Cir. 2019)).

### B. Declaratory Judgment Standards

"[A]ny court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration[.]" 28 U.S.C. § 2201(a). However, a "district court is not obliged to entertain every justiciable declaratory judgment claim brought before it," *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 982 (10th Cir. 1994), and "[w]hether to entertain" such a claim rests with "the sound discretion of the trial court." *Kunkel v. Cont'l Cas. Co.*, 866 F.2d 1269, 1273 (10th Cir. 1989).

In deciding whether to grant declaratory judgment, the Court must consider the following factors:

[1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to *res judicata* "; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

*Mhoon*, 31 F.3d at 983 (quoting *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1063 (6th Cir. 1987)).

III.    **UNDISPUTED MATERIAL FACTS**[3]

Columbia issued a commercial property insurance policy to Glo for the policy period October 15, 2022, to October 15, 2023. [Doc. No. 48-1 at 16]. The policy provided building and personal property coverage, *id.* at 25, as well as business income coverage, *id.* at 41. The policy included a water damage limitation stating Columbia would not pay for loss or damage to the interior of any building caused by rain "unless: (1) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain . . . enters." *Id.* at 95. The policy further excluded coverage for damage or loss from (1) "[c]ontinuous or repeated seepage or leakage of water," *id.* at 92; and (2) "[f]aulty, inadequate, or defective" "workmanship," "construction," or "[m]aterials used in . . . construction," *id.* at 93.

---

[3] This section includes material facts presented by both parties that are supported as required by Fed. R. Civ. P. 56(c)(1). If a party has asserted a fact, or asserted that a fact is disputed, but has failed to provide necessary support, the assertion is disregarded. All facts are stated in the light most favorable to the nonmovant, Glo.

On July 9, 2023, a storm passed through Enid, Oklahoma. [Doc. No. 48-2 at 2]. Water damage was discovered in numerous rooms at the hotel. *Id.* Specifically, the then-owner of Glo, Purvish Kothari ("Kothari"), stated that Glo "never had this problem before . . . [un]til[] this storm came up." Kothari Dep. at 129:3–5, [Doc. No. 80-6 at 29]. Kothari further testified that he did not have a "scientific explanation" as to why water entered the building as a result of those storms and stated that such a determination was "not [his] field." Kothari Dep. at 134:11–17, [Doc. No. 98-1 at 4]. Kothari reported the loss to Columbia on July 11, 2023, stating that the hotel had experienced winds of 70–90 mph and that there was potential roof damage on the north side of the building. [Doc. No. 48-2 at 2].

Through its agents, Columbia retained structural engineer Shawn M. Thompson ("Thompson") to investigate the loss. *See* [Doc. No. 48-3]. Thompson's curriculum vitae indicates he has (1) served as the President of Engineering Inc. since 2003, (2) worked as a structural engineer since 1986, and (3) provided expert witness services in nine prior cases. *Id.* at 51–52.

Thompson inspected the hotel on August 17 and September 25, 2023, and he later prepared an expert report for this litigation. *Id.* at 3. Thompson's report pulled weather data from "Oklahoma Mesonet," "National Oceanic and Atmospheric Administration" ("NOAA"), and "CoreLogic Weather Verification services." *Id.* at 35–38. The Oklahoma Mesonet report estimated a maximum windspeed of 36.5 mph on July 9, 2023, while the NOAA and CoreLogic reports did not register any July 9 wind events exceeding the minimum reporting thresholds for those services. *Id.* However, NOAA did report a July

21, 2023, wind event of 84 mph "approximately 4.75 miles from the Best Western Glo," which occurred between the date of loss and the date of Thompson's investigation. *Id.* at 34. Thompson noted that the CoreLogic report "indicated 62 mph estimated maximum wind speeds on [July 20, 2023], at the Best Western Glo." *Id.*

Thompson stated that "[w]ind damage to a structure and the surrounding area occurs first to the weaker elements and those more susceptible to strong winds," and that only after damage to lightweight elements "would we expect to see additional damage to less susceptible items on or around a building including damage and/displacement [*sic*] to the exterior components and cladding . . . ." *Id.* at 39. After that category of wind damage, "[t]he roof covering . . . is usually the next item on a building to be affected by strong winds and normally occurs along windward corners, eaves, and roof rakes where uplift forces are the greatest." *Id.* Within this framework, Thompson wrote:

> No wind damage was noted to the exterior of this four (4) story hotel, or at the roof level including the lightweight metal roof accessories, curved wall metal panels, metal parapet caps, roof edge metal, light weight gutter downspouts, or the TPO roof membrane. No evidence of excessive force from high winds or wind borne debris was observed to the exterior elevations of this hotel.

*Id.*

Thompson concluded by stating his "professional opinion[]" that (1) "[n]o structural damage has occurred to this hotel including roof covering or windows as a result of high winds in July 2023"; (2) "[w]ater intrusion occurring in July 2023 did not occur as a result of structural damage to the hotel as a result of high winds in July 2023";

and (3) "[w]ater intrusion is occurring at window openings and through wall air conditioning units[.]" *Id.* at 47.

Glo retained public adjuster Shawn Greene ("Greene") of Ironclaim to assist with the investigation and presentation of Glo's claim arising from the July 9, 2023 storm. *See* [Doc. No. 80 at 8]. Alongside Thompson, Greene inspected the Best Western Glo property after the July 9, 2023 storm, taking photographs of the damage and using those photographs in working up Glo's claim. *Id.*; [Doc. No. 103 at 11–12]; *see also* Greene Dep. at 90:19–22, [Doc. No. 80-1 at 9] (Greene confirming that he performed his inspection "with . . . Mr. Thompson").

Greene testified to his post-storm observations, stating he had seen "damage . . . on the roof" in the form of (1) "signage that looked like it may have taken a hit from flying debris or something," Greene Dep. at 93:16–17; (2) parts of the "membrane of the roof" that "looked like it may have been cut by debris as well maybe," *id.* at 94:14–16; and (3) "a flashing cap around the perimeter that looked like it had a couple scrapes or scratches on it," *id.* at 95:17–19, [Doc. No. 84-1 at 7–9]. Greene also testified he observed "there [were] some PTAC units where you can see . . . the light"[4] streaming into the rooms, and so he took photographs to document those gaps. Greene Dep. at 101:22–102:7, [Doc. No. 84-1 at 11–12].

---

[4] Glo states that "PTAC" stands for "packaged terminal air conditioner," which is the "standalone heater/air conditioner commonly used in hotel/motel properties." [Doc. No. 80 at 5 n.1].

Glo did not disclose Greene as an expert witness in this litigation, nor has Glo indicated an intent to designate Greene or anyone else as an expert on whether the July 9, 2023 storm caused damage to the structure's roof or walls through which rainwater entered the structure. *See* [Doc. No. 54] (Glo's expert identification which does not disclose Greene).

## IV.    <u>ANALYSIS</u>

Where federal subject matter jurisdiction is predicated on diversity of citizenship,[5] state substantive law governs. *See, e.g.*, *Universal Underwriters Ins. Co. v. Winton*, 818 F.3d 1103, 1105–06 (10th Cir. 2016). The "basic rule of insurance law" in Oklahoma is "that the insured has the burden of showing that a covered loss has occurred, while the insurer has the burden of showing that a loss falls within an exclusionary clause of the policy." *Pitman v. Blue Cross & Blue Shield of Okla.*, 217 F.3d 1291, 1298 (10th Cir. 2000) (citing *Fehring v. Universal Fidelity Life Ins. Co.*, 1986 OK 39, ¶ 11, 721 P.2d 796, 799). And in defining scope of coverage, Oklahoma law states "[t]he general declaration of insurance coverage, as established by the insurance policy and limited by its provisions, normally determines the insurance carrier's liability, and the insured's respective rights under the contract by identifying what risks are covered and excluded by the policy." *Dodson v. St. Paul Ins. Co.*, 1991 OK 24, ¶ 13, 812 P.2d 372, 377.

---

[5] The Declaratory Judgment Act does not provide an independent ground of subject matter jurisdiction. However, as the parties are completely diverse and dispute an amount in excess of $75,000, the Court notes diversity jurisdiction under 28 U.S.C. § 1332.

### A. The water damage limitation operates as an exclusion under Oklahoma law.

The water damage provision at issue in this case styles itself as a "limitation" rather than an exclusion. [Doc. No. 48-1 at 95]. Under Oklahoma law, a limitation operates to modify "[t]he general declaration of insurance coverage," *Dodson*, 1991 OK 24, ¶ 13, 812 P.2d at 377, within which Glo bears the burden of proving its loss falls, *Pitman*, 217 F.3d at 1298. But if the water damage "limitation" is in fact an exclusion, Columbia bears the "burden to show the loss is excluded by the policy." *Okla. Schs. Risk Mgmt. Tr. v. McAlester Pub. Schs.*, 2019 OK 3, ¶ 16, 457 P.3d 997, 1002. The Court ordered supplemental briefing from the parties on this question. [Doc. Nos. 95, 101].

Columbia argues it is indeed a limitation based upon "(1) the use of distinct terms . . . ; (2) the nature of the provisions within each section; and (3) the expansive application of limitations beyond the 'Cause of Loss – Special Form' to all forms contained in the policy." [Doc. No. 98 at 2]. Beyond the use of distinct terms, Columbia points to the types of events contemplated by the "limitations" section versus those considered by the "exclusions" section. *Id.* at 3. Columbia states exclusions consider "broad categories of potential causes" and that coverage is excluded when these causes contribute to the loss, even if other causes also contribute. *Id.* Columbia argues "[t]he critical nuance" between exclusions and limitations is that the latter are "not excluding a cause of loss as a whole . . . but rather limiting the coverage[.]" *Id.* at 3–4. In Columbia's view, the water damage limitation at issue is not an "exclusion based on a cause, but rather a limitation as to the type of damage." *Id.* at 4. And therefore, "a precondition must

be met—that the building first sustains damage to its roof or walls by a covered cause of loss." *Id.*

Finally, Columbia argues the "most important aspect" in this contract "is the fact that the limitations 'apply to all policy forms and endorsements,'" while the exclusions do not. *Id.* (quoting [Doc. No. 48-1 at 95]). To Columbia, the limitations' broad applicability to the policy "creates a priority of the limitations over the Cause of Loss – Special Form and all of the other dozens of forms contained within the policy" and "[g]iven this priority, the limitations clearly define the coverage available and are not excluding coverage." *Id.* at 4–5.

Glo argues the water damage limitation functions as an exclusion, regardless of its label. [Doc. No. 99 at 5–9]. In support, Glo points to Oklahoma precedent defining an exclusion as "a provision which eliminates coverage where, were it not for the exclusion, coverage would have existed." *Id.* at 5; *Dodson*, 1991 OK 24, ¶ 13 n.11, 812 P.2d at 377 n.11 (citing *Modern Sounds & Sys., Inc. v. Federated Mut. Ins. Co.*, 200 Neb. 46, 50, 262 N.W.2d 183, 186 (1978)); *see also First United Methodist Church of Stillwater, Inc. v. Phila. Indem. Ins. Co.*, 2016 OK CIV APP 59, ¶ 34, 423 P.3d 29, 40 (same). Glo points to how both the exclusions and the water damage limitation use the same lead-in phrase, "[w]e will not pay," as evidence that the water damage limitation serves a similar exclusionary function. [Doc. No. 99 at 7] (quoting [Doc. No. 48-1 at 90, 95]).

Glo also invokes the broad grant of coverage. The granting clause states "[w]e will pay for direct physical loss or damage . . . caused by or resulting from any Covered Cause of Loss," and the policy defines "Covered Cause of Loss" as "direct physical loss unless

10

the loss is excluded or limited in this policy." *Id.* at 5–6 (quoting [Doc. No. 48-1 at 25, 95]). Glo correctly points out that this grant of coverage and definition makes the policy an "all-risks" policy, and that insureds must generally prove only a fortuitous loss under such a policy. *Id.* at 6; *see also McAlester Pub. Schs.,* 2019 OK 3, ¶ 16, 457 P.3d at 1002. In this context, Glo argues, not that the "limitation" label becomes superfluous, but that it "communicates that water intrusion in the building due to rain is only a 'Covered Loss' if the building or structure sustains damage," thus eliminating otherwise existing coverage in the context of an all-risks policy. [Doc. No. 99 at 8].

While Columbia provides a nuanced distinction between limitations and exclusions based on categories and concurrent causes, the semantic differences cannot change the fact that the broad grant of coverage transforms the nature of the water damage limitation. The fact a provision applies "to all forms," [Doc. No. 98 at 2], says nothing about who carries the burden—it only describes the breadth of its application, not whether it grants or withdraws coverage. Had the grant of coverage enumerated discrete perils rather than utilized the wholesale phrase "direct physical loss," then the water damage limitation would function *only* to further define coverage of an enumerated peril. [Doc. No. 48-1 at 25, 95]. But here, interior water damage from a storm is plainly a "direct physical loss" that is "fortuitous." *See McAlester Pub. Schs.*, 2019 OK 3, ¶ 16, 457 P.3d at 1002; [Doc. No. 48-1 at 25, 95]. And so the water damage limitation "eliminates coverage where . . . coverage [otherwise] would have existed." *Dodson*, 1991 OK 24, ¶ 13 n.11, 812 P.2d at 377 n.11. The Court therefore treats the water damage limitation as an exclusion under Oklahoma law, and thus Columbia "has the burden of

11

showing" that Glo's loss falls within the water damage limitation. *Pitman v. Blue Cross & Blue Shield of Okla.*, 217 F.3d 1291, 1298 (10th Cir. 2000) (citing *Fehring v. Universal Fidelity Life Ins. Co.*, 1986 OK 39, ¶ 11, 721 P.2d 796, 799).

### B. Glo bears the substantive burden of proving a loss within the exception to the water damage exclusion.

While Columbia bears the exclusion burden, once that exclusion has been established, the question becomes who bears the burden of proving an exception restores coverage otherwise excluded. The Court's order of supplemental briefing requested argument on burden of proof, and as above the parties advanced arguments regarding grants of coverage, limitations, and exclusions.[6] But neither party squarely addressed who bears the burden of proving an *exception* that restores coverage otherwise excluded.[7] In fact, neither party identified the fact that the water damage limitation, if it is an exclusion, contains an exception that may restore coverage.[8]

The Oklahoma Supreme Court has not directly answered the question of who bears the burden of proving an exception to an exclusion. The Court thus faces "an

---

[6] Columbia also discussed authorities regarding the impact of declaratory judgment, addressed below. [Doc. No. 98 at 5–7].

[7] Glo did point out that Columbia "has not identified any reported case from Oklahoma state courts requiring a non-moving insured . . . to affirmatively prove coverage as a necessary precondition for a court denying summary judgment . . . ." [Doc. No. 99 at 4–5]. But Glo did not contemplate a scenario implicating an exception to an exclusion.

[8] Columbia characterized the water damage limitation's exception as a "precondition" to coverage under the premise that the limitation indeed functioned as a limitation in defining the grant of coverage. [Doc. No. 98 at 4]. But as explained above, the Court concludes the water damage limitation excludes coverage under Oklahoma law.

12

unsettled question of [Oklahoma] insurance law." *Cornhusker Cas. Co. v. Skaj*, 786 F.3d 842, 852 (10th Cir. 2015). In the absence of direct guidance, the Court "must . . . attempt to predict how [Oklahoma's] highest court would interpret [this issue]." *Squires v. Breckenridge Outdoor Educ. Ctr.*, 715 F.3d 867, 875 (10th Cir. 2013). The Court "may 'consider all resources available' in doing so, 'including decisions of [Oklahoma] courts, other state courts and federal courts, in addition to the general weight and trend of authority.'" *Skaj*, 786 F.3d at 852 (quoting *In re Dittmar*, 618 F.3d 1199, 1204 (10th Cir. 2010)). And the Tenth Circuit has counseled against certifying questions like this one "[w]hen [the Court] see[s] a reasonably clear and principled course" to follow. *Pino v. United States*, 507 F.3d 1233, 1236 (10th Cir. 2007).

The Oklahoma Court of Civil Appeals in *Kentucky Bluegrass Contracting, LLC v. Cincinnati Insurance Co.* affirmed the grant of summary judgment to an insurer where the insured had "failed to come forth with evidence supporting that burden regarding" two exceptions to exclusions in the insurance policy at issue. 2015 OK CIV APP 100, ¶ 40, 363 P.3d 1270, 1278–79. Although Oklahoma's procedural law on summary judgment may not be equivalent to the federal rule, the court's holding in *Kentucky Bluegrass* closely tracks the posture of this case. Procedure aside, the court in *Kentucky Bluegrass* required the insured to provide evidence supporting an exception to an exclusion, indicating the insured bore that substantive burden of proof. *Id.*

Placing on the insured the burden of proving an exception to an exclusion also tracks the analysis of leading treatises on insurance law, one of which states that this approach represents the modern trend. *See* 17A *Couch on Insurance* § 254:13 (3d ed.

13

2025) ("The trend clearly appears . . . to place the burden on insureds to prove that an exception to an exclusion applies to restore coverage."); 44A *Am. Jur. 2d Insurance* § 1927 (2025) ("[A]lthough the initial burden of demonstrating coverage rests with the insured, once the insurer shows the application of an exclusion clause, the burden of proof shifts back to the insured to show that exception to exclusion brings claim back within coverage.").

Finally, the language and structure of the policy reflect the insured's burden to show a covered cause of loss. The water damage exclusion states the insurer "will not pay for loss or damage to property . . . caused by or resulting from rain[.]" [Doc. No. 48-1 at 95]. The exclusionary language ends by prefacing an indented list with the word "unless," followed by the relevant condition here, "[t]he building or structure first sustains damage by a Covered Cause of Loss to its roof or walls[.]" *Id.* That the descriptions of conditions restoring coverage are set off from the main body of the exclusion and prefaced with the limiting word "unless" shows they are intended to serve as exceptions. *See id.* And the fact that the exception at issue refers back to a "Covered Cause of Loss" reflects a return to the insured's burden. *See id.*

In sum, Oklahoma's intermediate court of appeals, leading treatises on insurance law, and the text and structure of the policy together establish a "reasonably clear and principled course" that the Court here follows. *Pino*, 507 F.3d at 1236. The Court

concludes that the Oklahoma Supreme Court would place on the insured the burden of proving an exception to an exclusion.[9]

### C. Declaratory judgment does not shift Glo's substantive burden of proof to Columbia.

The fact that Glo is the nominal defendant cannot shift its burden to prove the exception to the water damage limitation. As Columbia points out in its supplemental briefing, the Supreme Court "ha[s] long considered 'the operation of the Declaratory Judgment Act' to be only 'procedural,' leaving 'substantive rights unchanged.'" *Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*, 571 U.S. 191, 199 (2014) (internal citation omitted) (first quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937); then quoting *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 509 (1959)); *see also* [Doc. No. 98 at 6] (same). And the "'burden of proof' is 'a substantive aspect of a claim.'" *Medtronic*, 571 U.S. at 192 (quoting *Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 20–21 (2000)); *see also* [Doc. No. 98 at 6] (same). The Tenth Circuit, too, has emphasized that declaratory judgment "is procedural in nature, designed to expedite and simplify the ascertainment of uncertain rights; and it should be liberally construed to attain that objective." *Ohio Cas. Ins. Co. v. Marr*, 98 F.2d 973, 975 (10th Cir. 1938).

Declining to shift Glo's substantive burden of proof also makes sense because "[t]he burden of proof which usually accompanies the affirmative of the issue of coverage should not be shifted merely due to the form of the action." *Fireman's Fund*

---

[9] This conclusion matches that arrived at by the only other district court to confront this precise question under Oklahoma law. *World Water Works Holdings, Inc. v. Cont'l Cas. Co.*, 392 F. Supp. 3d 923, 930–31 (N.D. Ill. June 24, 2019).

*Ins. Co. v. Videfreeze Corp.*, 540 F.2d 1171, 1176 (3d Cir. 1976). Indeed, "[i]t would seem rather anomalous that so important a matter (as the burden of proof) should depend on the chance of who first sues . . . ." *Id.* (first alteration in original) (quoting *Preferred Acc. Ins. Co. of N.Y. v. Grasso*, 186 F.2d 987, 991 (2d Cir. 1951)). This principle also accords with a leading insurance treatise's opinion on the subject. *See* 17A *Couch on Insurance* § 254:19 (3d ed. 2025) ("The customary and established rules as to the burden of proof are applicable to an action for a declaratory judgment. Accordingly, although it is the insurer which brings an action for a declaratory judgment that a [claim] does not fall within the coverage . . . the burden of proof has been held to remain with the claiming beneficiary . . . ."). And one of the few Tenth Circuit authorities to address the matter declined to reverse in that context. *Utah Farm Bureau Ins. Co. v. Dairyland Ins. Co.*, 634 F.2d 1326, 1328 (10th Cir. 1980) ("The split of authority arises when the issue is presented in a declaratory judgment context . . . . [C]ourts have held, however, that the mere fact that the insurer has instituted a declaratory judgment is not in and of itself determinative of the question of burden of proof."); *see also* [Doc. No. 98 at 6] (same).

Here, the parties agree that Glo suffered a fortuitous loss and that intruding rainwater caused that loss. Columbia itself states that Glo reported a loss related to rainwater intrusion on July 11, 2023, [Doc. No. 48-2 at 2], and Glo affirms that loss was from a "storm [that] resulted in water intrusion," [Doc. No. 80 at 4], citing to the same exhibit cited by Columbia, *see* [Doc. No. 80 at 6] (citing [Doc. No. 48-2]). Glo has thus carried its initial burden to show a fortuitous loss. Yet, this description of interior damage from rainwater also matches the limitation's exclusion of damage from "rain . . . whether

16

driven by wind or not." [Doc. No. 48-1 at 95]. That means Columbia has likewise carried its burden of showing that Glo's loss falls within the water damage limitation. *See Okla. Schs. Risk Mgmt. Tr. v. McAlester Pub. Schs.*, 2019 OK 3, ¶ 16, 457 P.3d 997, 1002 ("Once an insured under an all-risk policy shows the loss is a covered loss, then the insurer has a burden to show the loss is excluded by the policy.").

The next question is whether Columbia meets its summary judgment burden on the exception to the water damage limitation, and Columbia may do so by either pointing to Glo's lack of admissible evidence or by offering evidence sufficient to negate Glo's evidence. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998). If Columbia carries its burden, "the burden shifts to" Glo "to go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Id.* at 671.

This raises the next question on which the Court ordered supplemental briefing: whether a finding of fact as to the existence of the "storm created opening" in the property's roof or walls must rely upon expert causation testimony, or if lay causation testimony may be sufficient. As Glo has declined to present expert testimony upon this issue, the answer to this question may be dispositive.

**D. Glo fails its summary judgment rebuttal burden because proof of this storm-created opening requires expert testimony, which it fails to present.**

Columbia acknowledges that "a layperson could recognize the existence of some damage" to the property, but it correctly distinguishes lay observations of damage "from determining the cause, extent and cost of repair of any covered damage." [Doc. No. 98 at

17

7]. Columbia cites to the Tenth Circuit case of *Hollander v. Sandoz Pharmaceutical Corp.*, which applied Oklahoma law for the proposition that expert testimony is mandated "if 'the fact in issue is not within the realm of ordinary experience of mankind.'" 289 F.3d 1193, 1214 (10th Cir. 2020) (quoting *Strubhart v. Perry Mem'l Hosp. Tr. Auth.*, 1995 OK 10, ¶ 33, 903 P.2d 263, 274); *see also* [Doc. No. 98 at 7–8] (same). Another formulation under Oklahoma law states expert testimony is needed "[i]f the showing of any foundation fact requires a degree of knowledge or skill not possessed by the average person." *Harder v. F.C. Clinton, Inc.*, 1997 OK 137, ¶ 14, 948 P.2d 298, 305; [Doc. No. 98 at 8] (same).

Columbia further argues that Glo's reliance on the lay testimony of its independent adjuster, Greene, violates Federal Rule of Evidence 701 "by attempting to use a lay witness to provide necessary 'expert' testimony, while simultaneously contending such testimony is not 'expert' at all." [Doc. No. 102 at 3]. That rule requires a lay witness offering an opinion to base that opinion on "the witness's perception" and not "on scientific, technical, or other specialized knowledge." Fed. R. Evid. 701.

Columbia contends Greene's proposed testimony is analogous to the lay witness testimony found inadmissible in the Tenth Circuit case of *James River Insurance Co. v. Rapid Funding, LLC*, where a CEO was not permitted to use advanced mathematics in "calculating depreciation" and "account[ing] for the deterioration and neglect" of a building lost in a fire. 658 F.3d 1207, 1214–15 (10th Cir. 2011); [Doc. No. 102 at 5]. The court in *James River* reasoned that the CEO's testimony was not a "mathematical calculation well within the ability of anyone with a grade-school education," and thus it

18

was inadmissible under Federal Rule of Evidence 701 for requiring "[t]echnical judgment." *Id.* at 1214. In sum, Columbia argues both that expert testimony is required to prove causation and that Greene's testimony is inadmissible because it is expert in nature.

Columbia also points to the deposition testimony of Kothari, former owner of the property and principal for Glo in this action. [Doc. No. 98 at 8]. At deposition, Kothari was asked if he had a "scientific explanation as to why water entered . . . as a result of those storms," to which Kothari replied "no," stating that such a determination was "not [his] field." Kothari Dep. at 134:11–17, [Doc. No. 98-1 at 4].

In response, Glo cites *St. Paul Fire & Marine Insurance Co. v. Mackey McBrayer Lumber Co.*, 1933 OK 204, 21 P.2d 23, for the proposition that "experienced lay witnesses are qualified to testify regarding storm-related damage without expert qualification." [Doc. No. 99 at 9]. Glo also points to *Teel v. State Farm Fire & Casualty Co.*, 645 F. Supp. 3d 1242 (W.D. Okla. 2022), as an example where "non-expert testimony" allowed an insured to overcome summary judgment. *Id.*

Glo argues these cases allow Greene, as "an experienced insurance adjuster" to "guide an otherwise uneducated jury through the facts of Defendant's loss" by "utilizing the photographs he took and reviewed while working on the claim." [Doc. No. 103 at 11–12]. Glo also says Kothari can testify to the "observations related to the change in condition of the Hotel before and after the July 9, 2023 storm." *Id.* at 12 (citing [Doc. No. 80-6]). And therefore "[b]oth Mr. Greene and Mr. Kothari are appropriate witnesses to testify as to the post-storm state of Defendant's hotel." *Id.* Glo does not meaningfully respond to Columbia's argument that Greene's testimony is expert in nature other than to

19

characterize Greene's testimony as being an account of the loss "as [Greene] experienced it." *Id.*

Regarding the cases cited by Glo, the Court first notes that *St. Paul* is a case from 1933, decided well before the development of modern legal standards on expert testimony at both the state and federal levels. 1933 OK 204, 21 P.2d 23. Moreover, *St. Paul* dealt with whether an experienced wheat farmer plaintiff could offer lay opinion testimony on the *measure* of damages from an agreed loss—the parties did not dispute whether hail had damaged the wheat, they only disputed how much. 1933 OK 204, ¶ 4, 21 P.2d at 24 ("Plaintiff and a number of his witnesses were permitted . . . to testify that . . . in their opinion [the wheat] was damaged by hail to the extent of about 25 per cent."). The prior rule in Oklahoma had apparently been "that in an action to recover upon a policy insuring against loss caused by hail, opinion evidence offered by plaintiff as to the percentage or extent of loss is inadmissible." 1933 OK 204, ¶ 5, 21 P.2d at 24. The court in *St. Paul* overruled that precedent, reasoning that the prohibition conflicted with other then-recent cases, including a holding that "[o]ne who has been a farmer and stock raiser for many years is competent to testify as to the amount of damages done his stock by reason of drinking from a stream polluted by oil and salt water." 1933 OK 204, ¶ 7, 21 P.2d at 24 (quoting *Cent. Petroleum Co. v. Lewis*, 1924 OK 257, ¶ 0, 224 P. 186, 186 (syllabus)). That the court in *St. Paul* did not scrutinize the admissibility of the lay opinion witnesses' use of "scientific, technical or other specialized knowledge" is no surprise considering the first iteration of that rule did not arrive in Oklahoma's statute books until 1978. *See* 12 Okla. Stat. § 2701 (1978).

20

Even then, Columbia and Glo do not merely dispute how to measure the value of the loss. Unlike the farmer plaintiff in *St. Paul*, Glo does not offer Greene's testimony for the sole purpose of establishing the measure of damages, made reliable via Greene's experience and firsthand observations. 1933 OK 204, 21 P.2d 23. Rather, Glo offers Greene's testimony as proof that the alleged storm *caused* damage to the property's roof and walls, through which rainwater entered and damaged the structure's interior. *See* [Doc. No. 80 at 17–18]. For these reasons, *St. Paul* is inapplicable to the Court's analysis. 1933 OK 204, 21 P.2d 23.

Glo's second case cited in support, *Teel v. State Farm Fire & Casualty Co.*, is likewise inapposite. 645 F. Supp. 3d 1242 (W.D. Okla. 2022). Despite Glo's assertion that *Teel* is an example of overcoming summary judgment on an insurance causation question with "non-expert testimony," nothing in the text of *Teel* indicates whether the witness in question was an expert. Rather, the short opinion states that "[w]hen [the witness] was asked if he agreed that there were loose shingles on the roof that were not creased or broken he answered 'no' and then stated that although not every loose shingle would be creased they would not 'just lose their seal randomly.'" *Teel*, 645 F. Supp. 3d at 1245. Nothing in *Teel*'s reasoning analyzes whether the witness in question offered expert testimony or whether expert testimony was required to prove causation under Oklahoma law. As such, the Court finds no persuasive value in the reasoning of *Teel*. 645 F. Supp. 3d 1242.[10]

---

[10] Even if the reasoning in *Teel* did have persuasive value, it would not be binding on this Court. *See Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (noting that "[a]

### 1. A finding of fact as to the existence of a storm-created opening mandates expert testimony.

A jury finding that Glo's loss falls within the exception to the water damage limitation must be supported by expert testimony.[11] This can be seen by applying the relevant case law on the matter to Glo's own characterization of the causation inquiry.

Glo avers that Greene's testimony serves to refute Thompson's report "that he did not notice any exterior damage[.]" [Doc. No. 80 at 17]. Specifically, "Greene's testimony noted storm related damage to the exterior of the building that dislodged the water-proofing in and around PTAC units that allowed light (and obviously water) into the building as well as damage to the building's roof and wind-related damage to the windows themselves." *Id.* at 17–18. Glo seeks to have Greene, "an experienced insurance adjuster," "guide an otherwise uneducated jury" using "the photographs [Greene] took

---

decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case" (citation omitted)).

[11] Glo putatively disputes Columbia's framing of the causation inquiry by arguing there is a distinction between Columbia's assertion of "a lack of 'structural damage' to the exterior of the building" and the policy's exception language, which excludes coverage unless the "building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain . . . enters." [Doc. No. 80 at 17]. Glo insists the exception's language does not contemplate "structural damage" and instead urges the Court to examine "whether there exist[s] evidence of a 'storm created opening' that allowed water to enter the subject building." *Id.* (quoting *Garnett Rd. Baptist Church v. Guideone Mut. Ins. Co.*, 19-cv-00286, 2020 WL 6386870, at *4–7 (N.D. Okla. Oct. 30, 2020)). But given that the plain language of the exception requires that the "*structure* first sustains *damage* . . . through which the rain . . . enters," [Doc. No. 48-1 at 95] (emphasis added), it does not appear Columbia's use of "structural damage" meaningfully differs from Glo's use of "storm created opening." As no party attempts to define a "storm created opening" that could exist without "structural damage," the Court treats the phrases as synonymous.

22

and reviewed while working on the claim," [Doc. No. 103 at 11–12], so that Glo can prove a specific wind event had the mechanical capacity to "dislodge[] water-proofing" materials and damage the building's roof and windows, [Doc. No. 80 at 17–18].

Seen through Glo's own framing, proving that course of events is plainly "not within the realm of ordinary experience." *Strubhart v. Perry Mem'l Hosp. Tr. Auth.*, 1995 OK 10, ¶ 33, 903 P.2d 263, 274. Absent assistance from an expert, the "otherwise uneducated jury," [Doc. No. 103 at 11–12], cannot decide whether a given wind load is capable of "dislodg[ing] water-proofing" or otherwise damaging the roof and walls of the property in the manner alleged by Glo, [Doc. No. 80 at 17]. A jury verdict in favor of Glo on the exception "requires a degree of knowledge or skill not possessed by the average person," and thus Glo must support that claim with expert testimony. *Harder v. F.C. Clinton, Inc.*, 1997 OK 137, ¶ 14, 948 P.2d 298, 305. Glo does not make any argument to the contrary—nowhere does Glo explicitly argue that the ability of the storm to cause the alleged damage is readily ascertained by an ordinary juror.

The content of Thompson's engineering report illustrates what is already intuitive about this damage causation inquiry—that it is technical in nature. Thompson's report states that "[w]ind damage to a structure" occurs in a recognizable pattern. [Doc. No. 48-3 at 39]. As wind velocity increases, damage first occurs to the "weaker elements" of a structure, followed by "[]displacement to the exterior components and cladding," and only then does damage to "[t]he roof covering" occur. *Id.* And Thompson reports that "no wind damage was noted to" even "the lightweight metal roof accessories." *Id.* The lack of damage noted on the "weaker elements" of the building, combined with the lack of

23

weather reports noting sufficiently strong winds in the vicinity of the structure in July 2023, led Thompson to conclude that "no structural damage has occurred to this hotel including roof covering or windows as a result of high winds . . . ." *Id.* at 39, 47.

Case examples confirm the need for expert testimony to support Glo's causation theory. In *Hollander v. Sandoz Pharmaceutical Corp.*, a jury asked to "assess the arguments regarding the alleged effects" of a medication "would be required to assess [a] wide variety of scientific evidence," and thus the plaintiffs "c[ould] [not] prove their claim without expert testimony." 289 F.3d 1193, 1214 (10th Cir. 2020). "[T]he alleged effect" of the pharmaceutical was "not within the realm of ordinary experience." *Id.* Likewise, in *Cook v. McGraw Davisson Stewart, LLC*, the Oklahoma Court of Civil Appeals held expert testimony was required to prove whether the use of dual-factor authentication was sufficient to safeguard a plaintiff's email account. 2021 OK CIV APP 32, ¶ 20, 496 P.3d 1006, 1012. The court reasoned that "[t]he average juror is unlikely to be familiar with industry standards or recommendations for email security . . . or whether Defendants' email system met those standards." *Id.* Thus, "[e]xpert testimony was necessary to establish" that critical fact issue. *Id.*

Here, Glo alleges that the wind forces present on July 9, 2023, were sufficient to "damage . . . the exterior of the building," "dislodge water-proofing," and "damage . . . the building's roof . . . [and] windows." [Doc. No. 80 at 17–18]. Like the effects of the pharmaceutical in *Hollander* and the email security standards in *Cook*, the ability of a specific storm to damage intact sealants, windows, and roofing materials is a technical question "not within the realm of ordinary experience." *Strubhart*, 1995 OK 10, ¶ 33, 903

24

P.2d at 274. On the facts in this record, an ordinary juror may conclude from Greene's testimony only that interior water damage *occurred*—he or she cannot conclude that the water entered from an opening created by the storm.

Straightforward intuition, the structure of Thompson's report,[12] and case law on the issue all confirm that Glo cannot support its proffered method of causation without expert testimony.

### 2. *Greene's testimony is expert in nature.*

Greene's proposed lay opinion testimony plainly violates Federal Rule of Evidence 701 because it is based on not just his "perception," but also on the "specialized knowledge" attendant to his role as an independent adjuster. Fed. R. Evid. 701. Glo itself implies this is the case by repeatedly arguing that Greene's testimony "stands opposed to Thompson's proposed testimony." [Doc. No. 80 at 18]; *see also* [Doc. No. 99 at 10] ("Defendant has submitted sufficient evidence that the exclusions relied upon by Plaintiff in this action are inapplicable through the testimony of experienced insurance claim adjuster Shawn Greene."). Glo also explicitly states Greene's testimony relies upon his "experience." [Doc. No. 103 at 11]. And in deposition, Greene cast himself as an expert, responding to the question "do you hold yourself out as an expert in construction" with "I

---

[12] The Court does not find that the content of Thompson's report is necessarily credible, nor does it conclude that Thompson's report carries Columbia's prima facie showing of a lack of genuinely disputed material fact by *negating* Glo's evidence. Rather, Thompson's report merely confirms the Court's holding that proving a storm caused damage of the kind asserted by Glo is a sufficiently complex question so as to mandate expert testimony. Straightforward application of the rule and comparison with the facts of other Oklahoma cases are independently sufficient grounds for this holding, apart from Thompson's report.

would like to think so. I've been a public adjuster for over 20 years" and "I have a general knowledge of . . . construction or damage." Greene Dep. at 23:23–24:19, [Doc. No. 102-1 at 6–7].

Another district court applying Oklahoma law has held similarly. In *Wilson v. State Farm Fire & Casualty Co.*, a court of the Northern District of Oklahoma held that one of the plaintiff's lay witnesses, a roofer, could "not testify to issues or facts of which he ha[d] no personal knowledge," including "the cause of the [storm] damage." No. 21-cv-0062, 2022 WL 1555816, at *13 (N.D. Okla. May 17, 2022). The court in *Wilson* reasoned that such testimony was impermissible specifically because "such causation testimony" regarding the storm damage "crosse[d] over into expert testimony within the meaning of Rule 702 and must be scrutinized under *Daubert*." *Id.*

Glo seeks to do more than merely have Greene testify that he witnessed water damage—any lay person could identify such damage. Rather, Glo wants Greene to use his specialized knowledge as an adjuster to testify that the water damage he photographed came about as a result of a storm-created opening in the roof and walls of the property. Greene cannot do this without being qualified and admitted as an expert on such matters.[13]

---

[13] The Court declines to analyze in-depth whether Oklahoma or federal law governs the admissibility of Greene's lay opinion testimony. Neither party has raised the issue, nor does Glo argue for admissibility based on Oklahoma law. Moreover, there is a binding federal directive on point in Federal Rule of Evidence 701, and Oklahoma's rule does not conflict with it. *Compare* Fed. R. Evid. 701, *with* 12 Okla. Stat. § 2701 (mirroring the federal rule); *see also James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1218–19 (10th Cir. 2011) (citing *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 422 (2010) (Stevens, J., concurring in part)) (holding

### 3. *Glo cannot designate Greene as an expert.*

Defeating summary judgment does not require the nonmovant's evidence to be in admissible form. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Yet Federal Rule of Civil Procedure 56(c)(2)'s reference to a party's ability to "produce admissible evidence to support the [material] fact" makes clear that where proffered evidence has no possibility of taking an admissible form at trial, summary judgment is appropriate.

Columbia argues this is the case with Greene—that even if Greene could be qualified as an expert at trial, his testimony would still be prohibited because he has an improper financial interest in the outcome of the case. Specifically, Columbia asserts that Greene's company, Ironclaim, "is entitled to 5% of whatever Defendant obtains from Plaintiff by way of insurance proceeds . . . ." [Doc. No. 102 at 9]. And Greene's compensation, too, is "based on the outcome of the litigation." *Id.*

Columbia directs the Court to the Oklahoma Rules of Professional Responsibility, wherein Rule 3.4(b) states counsel may not "offer an inducement to a witness that is prohibited by law." Comment 3 to that provision states that while expert witnesses may be compensated, "[t]he common law rule in most jurisdictions is that it is improper to pay an occurrence witness any fee for testifying and that it is improper to pay an expert witness a contingent fee." Okla. R. Pro. Resp. 3.4, cmt. 3.

Columbia points to out-of-circuit caselaw excluding expert testimony paid on contingency, in addition to a district court in the Tenth Circuit holding the same, and

---

state evidentiary rules on admissibility do not control in diversity cases where the relevant state and federal rules do not directly conflict).

numerous other district courts following the same rule. *See* [Doc. No. 102 at 9–10] (citing *Crowe v. Bolduc*, 334 F.3d 124, 132 (1st Cir. 2003) and *Wheatridge Off., LLC v. Auto-Owners Ins. Co.*, 578 F. Supp. 3d 1187, 1211 (D. Colo. 2022)). Alternatively, Columbia argues Greene would not be admitted as an expert in this case under *Daubert v. Merrell Dow Pharmaceutical, Inc.*, 509 U.S. 579 (1993). [Doc. No. 102 at 7].

Glo has declined to designate Greene as an expert up to this point, and the deadline for such designations has long passed. *See* [Doc. No. 39] (amended scheduling order dated June 28, 2024, stating the expert disclosure deadline has expired). To designate Greene as an expert at this late stage, Glo would have to show "good cause" and receive leave of the Court under Federal Rule of Civil Procedure 16(b)(4). Even if the Court granted that discretionary motion, Glo would also need to show its late disclosure was "substantially justified or . . . harmless." Fed. R. Civ. P. 37(c)(1).

Here, Glo has voluntarily proffered testimony from Greene that is expert in nature, while also voluntarily choosing not to designate him as an expert. As Columbia puts it, Glo cannot "use a lay witness to provide necessary 'expert' testimony, while simultaneously contending such testimony is not 'expert' at all." [Doc. No. 102 at 3]. The Court agrees.

Moreover, Glo has never argued that Greene *could* be admitted as an expert in this case. This is despite ample opportunity to do so in its supplemental briefing. *See generally* [Doc. Nos. 80, 99, 103] (containing no argument that Greene could be qualified as an expert on the causation issue); *see also* [Doc. No. 83 at 3] (Columbia raising Greene's lack of qualifications to serve as an expert witness). Over the course of three

separate briefs on this motion, Glo has not once mentioned *Daubert* standards or Federal Rules of Evidence 701 and 702. On this record, Glo has disclaimed any intent to offer Greene—or anyone else—as an expert on this question, and thus the Court will not consider that path in determining whether Glo has shown evidence on causation admissible at trial.

Glo's separate attacks on Thompson's credibility and reliability make no difference. *See, e.g.*, [Doc. No. 80 at 15–20] (analyzing Thompson's deposition testimony to attack the reliability and credibility of Thompson's report). Even if Columbia had provided no expert testimony of its own, the outcome here would not change. *See Celotex*, 477 U.S. at 323 ("[W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim"). The same applies to Glo's arguments on the defect and seepage exclusions. *See, e.g.*, [Doc. No. 80 at 16–17, 19–20]. Those arguments would be germane to the outcome had Glo showed its loss fell within the exception to the water damage limitation.[14] In that scenario, the burden would then shift back to Columbia to prove the seepage and defect exclusions. But because Glo failed its burden of production in rebuttal, the Court need not reach those arguments.[15]

---

[14] Glo's attempt to reframe the water damage limitation as a "roof/wall damage limitation" is likewise ineffectual to change the nature of the limitation. *See* [Doc. No. 80 at 17] (sub-heading characterizing the water damage limitation as a limitation on "roof/wall damage").

[15] The latter portion of Glo's response brief consists of arguments pertaining to its bad faith counterclaim. As Glo's bad faith counterclaim is not before the Court on this

Glo's failure to designate an expert witness upon this issue creates a "complete failure of proof." *Celotex*, 477 U.S. at 323. And this failure of proof "necessarily renders all other facts immaterial" because it regards "an essential element" on which Glo "has the burden of proof" at trial. *Id.* Consequently, Columbia, as "the moving party[,] is 'entitled to a judgment as a matter of law.'" *Id.*

**E. Declaratory judgment is appropriate in this case.**

Even as Glo's failure on summary judgment rebuttal entitles Columbia to judgment as a matter of law, the Court's inquiry is not complete. This is because while the Declaratory Judgment Act gives this Court "competence to make a declaration of rights," "it d[oes] not impose a duty to do so." *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 982 (10th Cir. 1994) (quoting *Pub. Affs. Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962)).

Columbia argues declaratory judgment is appropriate in this case. In support, Columbia directs the Court to on-point Tenth Circuit case law stating that "one of the primary functions of the [Declaratory Judgment] Act is to provide the insurer with a forum." [Doc. No. 48 at 7] (quoting *Farmers All. Mut. Ins. Co. v. Jones*, 570 F.2d 1384, 1386 (10th Cir. 1978)).

Glo argues the Court should not use declaratory judgment, contending that a "better alternative remedy" is available via "Glo's counter-claims for breach of insurance contract and violation of the duty of good faith and fair dealing." [Doc. No. 80 at 15].

---

Motion, the Court declines to reach those arguments. *See* [Doc. No. 80 at 20–24] (consisting of arguments regarding Columbia's claims handling process).

30

Whether to grant declaratory judgment rests with "the sound discretion of the trial court." *Kunkel v. Cont'l Cas. Co.*, 866 F.2d 1269, 1273 (10th Cir. 1989). In exercising its discretion, the Court considers whether declaratory judgment will (1) fully settle the controversy, (2) clarify disputed legal relations, (3) enable procedural fencing, (4) negatively impact state-federal court relations, or (5) usurp superior alternative dispositions. *Mhoon*, 31 F.3d at 983.

Here, granting declaratory judgment would not technically settle this controversy entirely because Columbia has not moved for summary judgment on Glo's counterclaims. [Doc. No. 48 at 1 n.1]. However, Glo's counterclaim for breach of contract plainly requires a finding of coverage, which declaratory judgment would preclude. Moreover, entitlement to coverage is also a basic prerequisite for bad faith tort recovery under Oklahoma law. *Christian v. Am. Home Assur. Co.*, 1977 OK 141, ¶ 26, 577 P.2d 899, 905 ("[T]ort liability may be imposed only where there is a clear showing that the insurer unreasonably, and in bad faith, withholds payment of the claim of its insured."). Thus, while granting declaratory judgment would not procedurally settle the controversy, the substance of all claims would likely be settled, with Glo's remaining counterclaims appearing ripe for disposition.

Procedural fencing is likewise not implicated here, as Glo would be required to prove entitlement to coverage to prevail on its counterclaims. Glo also had ample time to decide whether to retain an expert on the causation question—the procedural posture did not preclude Glo from doing so. Likewise, no party has informed the Court of any

concurrent state court proceedings impacted by this case, meaning concerns for state-federal court relations are not at issue.

Finally, alternative disposition of this case through the lens of Glo's counterclaims would be only nominal. Glo provides no explanation for why this would not be the case. *See* [Doc. No. 80 at 15] (containing no explanation for why Glo's counterclaims would be preferable to declaratory judgment). To delay a legal finding of non-coverage would serve no substantive purpose.

The Court concludes that declaratory judgment is appropriate.

## V.    CONCLUSION

For these reasons, the Court GRANTS Columbia's Motion for Summary Judgment. The Court ORDERS the parties to confer regarding Glo's counterclaims considering this order and to file a joint status report within 14 days outlining (1) whether they have discussed and reached a resolution on other pending motions or the action in its entirety, and (2) their positions regarding next steps in this case. Upon receipt and review of the status report, the Court may set the parties for a conference.

IT IS SO ORDERED this 12th day of March 2026.

JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE